(663 P.2d 308)

No. 54,377

TRANSIT CASUALTY COMPANY, *Appellant,* v. TOPEKA TRANSPORTATION COMPANY, INC., *Appellee.*

Opinion filed May 26, 1983.

*Gregory A. Whittmore* and *Frederick K. Starrett,* of Fisher, Ochs and Heck, P.A., of Topeka, for the appellant.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, for the appellee.

Before FOTH, C.J., SPENCER and PARKS, JJ.

FOTH, C.J.: Plaintiff insurance carrier brought this action to recover $7,515.00 in retrospective premiums alleged to be due under liability policies issued to the defendant, a city bus company, covering the period February 2, 1971, to July 6, 1973. Plaintiff appeals from a judgment rendered in favor of defendant after bench trial.

The premiums called for were fixed by policy formula. The standard premium was determined by the company's revenues, with a guaranteed minimum. The retrospective aspect was based on the company's experience: the total of claims paid (including reserves) plus the expense of settling them was divided by a factor of 60% (or, multiplied by 166⅔%). The result was the "Guaranteed Loss Ratio Premium." If greater than the prepaid standard premium the insured bus company was liable for the difference up to a limit not approached here; if less, the insurer was to refund the difference. The premiums claimed are, in effect, the insurer's out-of-pocket expenses on small claims asserted against the transit company during part of the policy period, plus what amounts to a 66% service charge for handling the claims. Thus, when the insurer settled a claim it did so with the insured's money. Further, the more it paid out in claims the greater its own compensation.

The original policy period was February 2, 1971, to February 2, 1974. However, the defendant decided to terminate its opera-

tions in June, 1973, and surrendered any rights under its policy on July 6, 1973. There had been one retrospective premium adjustment during the policy period calling for an additional $3,378.88 from defendant, which had been paid in July, 1972. In the summer of 1973 defendant began winding up its business. According to its witnesses, an oral agreement was reached with plaintiff that any premium refund for the second policy year would be held until a final balance was struck so that no more demands would be made on defendant. This was to facilitate the determination of defendant's final tax liability and final distribution of its assets and a like procedure for the estate and trust of a deceased stockholder.

In November, 1973, plaintiff refunded $6,396.22 to the independent insurance agent handling the policy. Defendant received the money in January, 1974. On June 27, 1974, plaintiff first sent a bill for the premiums now claimed. On July 2, 1974, final distribution was made of defendant's remaining cash—an amount smaller than plaintiff's claim.

The trial court adopted in toto defendant's suggested findings of fact and conclusions of law. It thus found there should be no recovery on three grounds:

1. The refund of premiums made in November, 1973, five months after defendant had ceased doing business, was a voluntary payment and cannot be recovered by plaintiff.

2. The burden was on plaintiff to show that the claims it paid and for which it sought reimbursement were legal obligations of the transit company, were covered by the policies, and were settled for reasonable amounts. It produced no evidence on any of these issues and therefore didn't sustain its burden of proof.

3. The refund of premiums of November, 1973, was made after plaintiff expressly agreed it would make no refund until a final balance had been struck on its books and it would thereafter assert no monetary claim against defendant. Relying on this agreement defendant accepted the refund, wound up its tax and business affairs and distributed its assets to its stockholders. These included the estate and a trust, which in further reliance wound up their tax and business affairs and distributed *their* assets. Because the reliance was justified, plaintiff is now equitably estopped to assert this additional claim against defendant.

These are alternative grounds, and if any one of them is correct

it is enough to sustain the judgment. Under accepted principles of appellate review we find enough evidence to support the factual findings underlying each; that there may have been contrary evidence is not our concern. We prefer, however, to base our decision on the second ground.

At trial plaintiff's evidence on the amount claimed consisted in essence of showing how much it had paid to named claimants. This was accomplished through computer printouts, vouchers, and drafts. From plaintiff's documentation it appears there were two incidents, one involving one claimant and the other six. (Plaintiff states there were ten claims; the discrepancy is immaterial.) The evidence showed whether each claim was for property damage or bodily injury, and the amount paid.

What the trial court found missing from plaintiff's proof was: (1) evidence showing defendant's probable liability and (2) evidence that the amounts paid were reasonable. As the trial court put it, "[T]he record is totally devoid of any evidence that the Plaintiff had made any investigation or inquiry and had come to a conclusion based upon reasonable evidence that the Defendant was legally obligated to pay the claims, and, lastly, the record is devoid of any evidence that could form a basis of an opinion for a determination that the insurer had reasonable grounds to make the payments and was acting in good faith in that the amount of the claims were, in fact, reasonable."

Plaintiff asserts that the trial court put it to too stringent a burden of proof. It should have been enough, it says, for it to show as it did that the claims were made and that it paid them. Upon making that showing, it should have been entitled to a presumption of good faith and reasonableness, subject only to being rebutted by contrary evidence by the insured.

We are cited to and find only two cases dealing with the burden of proof in this type of retrospective premium case. The first is *Transport Indemnity Co. v. Dahlen Transport, Inc.,* 281 Minn. 253, 161 N.W.2d 546 (1968). The court there, after describing a premium arrangement much like this one, concluded:

"Because of the conflict of interest which is inherent in this arrangement, we believe, in the absence of any directly controlling precedent of which we are aware, that the right of the insurer to collect from the insured in the form of a retrospective premium amounts paid out by it as losses should be contingent upon proof by the insurer that the settlements so made were in good faith and reasonable. The insurer, having been charged with the responsibility for inves-

tigating and adjusting the loss, is in possession of the relevant information upon which a determination of reasonableness and good faith must be based. The insured, having delegated the right and duty of investigation and settlement to the insurer, and having agreed to pay the expense incurred in carrying out this assignment, has, by the terms of its insurance contract, put the information critical to the issue of reasonableness and good faith in the exclusive possession of the insurer. If the insured is to pay out as a retrospective premium the amounts paid by the insurer in settlement of liability claims under circumstances where, theoretically at least, the settlement of the claim has been beneficial to both . . . the insured should be entitled, it seems to us, to have the insurer produce the information pertinent to the reasonableness and good faith of the settlement and assume the burden of proof on the issue." 281 Minn. at 257-58.

The second retrospective premium case is *Insurance Co. of No. Amer. v. Binnings Const. Co., Inc.,* 288 So. 2d 359 (La. App. 1974). The court there followed the Minnesota court in principle and theory:

"We agree with that court's pertinent observation that the insurer is the party in possession of the evidence upon which the propriety of the settlements must be judged. We further agree that the insurer must ultimately bear the burden of proving reasonableness of its settlements, especially where it is a plaintiff who must prove every element of its cause of action for (in effect) reimbursement of those settlements it made of defendants' liabilities." 288 So. 2d at 361.

However, the Louisiana court went on to fashion a new procedural rule dealing not with the burden of proof but the burden of going forward with the evidence. Noting that the case involved 130 different claims in one $12,000 lawsuit, the court thought it would abuse both the parties and the judicial system to require proof of reasonableness of each in the absence of any challenge. The Louisiana rule adopted there requires the insurer to prove payment. Then the insured may, without proving unreasonableness, put on evidence to cast "sufficient doubt" to deprive the insurer of the presumption of reasonableness. At that point the burden shifts back to the insurer to prove the reasonableness of each claim put in doubt by the insured's evidence.

Of the two approaches we prefer that of the Minnesota Supreme Court. Without unnecessary complication it places the burden of proof on the plaintiff where it traditionally belongs. It requires the party with the information at hand to produce it, and it puts upon the party acting in a fiduciary capacity the burden of proving fair dealing.

Plaintiff objects that such a rule will require it in self-defense to litigate all claims and thus discourage settlements, which are

favored in the law. As part of the same argument it says proving the reasonableness of each claim would require it to call as witnesses every investigator, adjuster, lawyer, and secretary who had anything to do with each claim.

We think such fears are exaggerated. The issues as to each claim are simply whether the insurer had a good faith belief in liability and whether the amount paid in settlement was reasonable. Presumably each payment made by the company was based on documentation in its files bearing on those two factors. Such documentation could be in the form of accident reports, medical reports, investigators' reports, adjusters' recommendations, lawyers' recommendations, or any combination. Placing such documents in evidence should adequately answer the question of why a claim was paid in a given amount. We see no reason why such ultimate accountability to the insured for what is done with the insured's money should require any change in the operations of an insurance company dealing in good faith with its insured.

In short, we agree with the trial court that plaintiff did not meet its burden of proof.

We also agree with the trial court that an "account stated" was not pleaded in the petition so as to give defendant notice that plaintiff made such a claim. The petition nowhere suggested that defendant had "agreed" to pay plaintiff's final bill. See *Quincy Lumber Co., Inc. v. Saia,* 192 Kan. 776, 391 P.2d 144 (1964). Further, the trial court did not abuse its discretion in denying plaintiff's belated motion to amend the petition to add such a claim. If the issue of agreement to pay were to be tried, defendant would have been entitled to seasonable notice so it could conduct discovery and prepare on that issue.

Affirmed.