A91A1046. MORRISON et al. v. KOORNICK et al.
(411 SE2d 105)

BEASLEY, Judge.

This wrongful death action stems from allegations of medical negligence. Edna M. Morrison, individually and as widow and executrix of the estate of her late husband, Harold M. Morrison, and the deceased's son, Michael Morrison, individually, appeal the judgment entered on the jury's verdict in favor of defendants vascular surgeon Koornick, radiologist Soder, and Soder's professional corporation, Atlanta Radiology Consultants. Defendant orthopedic surgeon Hecht is not a party on appeal because settlement was reached with him during trial.

Sixty-nine-year-old Harold Morrison was experiencing back pain and consulted Dr. Hecht. Hecht determined that Morrison had a herniated spinal disc. After conservative treatment proved unsuccessful, surgery for a lumbar laminectomy, i.e., disc removal, was scheduled. Such surgical procedure has a mortality rate of less than one percent.

On August 3, 1987, Hecht operated on Morrison. As Hecht was nearing the end of removal of the defective disc, the doctor noticed a flash of bright red blood in the operative site. The bleeding initially was profuse, approximately 200 cc's. Suspecting that some blood vessel or possibly the aorta, the body's major arterial trunk, had been injured, Hecht temporarily packed the area of bleeding and sent for aid from Koornick, who was assisting in another operation.

Hecht related his concerns to Koornick and related what had happened. The wound's temporary packing was removed and Koornick observed the incision site for approximately 20 minutes and did not see additional active bleeding. Even though no further bleeding was apparent, Koornick believed that an aortic injury was possible. Koornick inquired about Morrison's medical history and learned that the patient had polycystic kidney disease with reduced renal function and had had prior surgery for partial removal of the colon. The decision was made to repack the incision with gel foam material and to close. Koornick ordered that Morrison undergo a CT scan, a radiological procedure.

Later that evening, Morrison underwent the CT scan with Koornick present. Radiologist Cox, Soder's colleague and a member of Atlanta Radiology Consultants, P.C., interpreted the test and discussed the results with Koornick. It was Cox's opinion that the aorta was not injured. Cox entered his findings on the hospital chart, primarily stat-

ing: "Aorta appears intact." Koornick decided not to operate but to wait. Morrison was taken to the intensive care unit.

The next day, a repeat CT scan was performed. Dr. Soder examined the second scan as well as the one from the previous evening. As to the original study and in contrast to Cox's assessment, Soder concluded: "There appears to be a bleed from the abdominal aorta extending to the right and up along the gutter medial to the liver and around the kidney and down to the level of the bifurcation." As to the second CT scan, Soder concluded that the hematoma extended farther caudally but that it was uncertain whether this represented further bleeding or merely redistribution of the blood already present. Soder's conclusions were recorded in two separate typed reports. Koornick did not hear about or see Soder's findings at that time.

The original bleeding from Morrison's aorta had run off into the body's tissue planes causing a tamponade effect which temporarily blocked further bleeding. Morrison remained under observation and was transferred out of the intensive care unit. On August 7, the tamponade effect gave way and major bleeding from the aorta ensued. A third CT scan confirmed the hemorrhage. Koornick operated on Morrison to repair what was found to be a 0.5 centimeter hole in the aorta. Morrison lost ten of the fourteen units of the body's total blood volume. Following the surgery, Morrison remained hospitalized and his condition deteriorated over a period of five weeks, culminating in his death.

1. Appellants contend that the trial court erred in allowing Soder and Atlanta Radiology Consultants, P.C. to cross-examine over objection appellant's expert, vascular surgeon Stanton, on medical records not in evidence before the court.

The testimony of Dr. Stanton was presented during plaintiffs' case-in-chief via a videotape made the preceding evening after the court adjourned trial early so that counsel for the parties could fly out of state to take Stanton's deposition.

The subject exchange was the following. Counsel for Dr. Soder and the professional corporation: "Now, my understanding after — you have had a chance to review the deposition transcripts of both Dr. Koornick, Dr. Hecht, and Dr. Perry Soder, and Dr. George Cox, as well as the medical record at St. Joseph's Hospital from the time Mr. Morrison was admitted until the August 7th of 1987 surgery, correct?" Stanton: "That's right." Counsel: "And you devoted some attention to reading each of those items, true?" Stanton: "Yes, I did." Counsel: "And in your opinion the care rendered by both Dr. Soder and Dr. Cox does not rise to the level of being a deviation from that degree of care and skill accepted in the medical professional (sic) generally; isn't that true?" Stanton: "That's true." Counsel: "Put in lay terms, you don't believe that either one of them were negligent, do

you?" Stanton: "No, I don't."

The trial court had just ruled on the very same objection raised by defendant Koornick's counsel as to the basis of the expert's opinion as elicited by plaintiffs' counsel. In that instance, the court sustained the objection, whereas the court overruled plaintiffs' objection made on the same ground when it related to the cross-examination of their expert witness. Whether plaintiffs' objection could have been obviated at the taking of the deposition the night before is thus not dispositive, as all parties and the court considered all objections as having been reserved. Moreover, to require plaintiffs to have objected at the deposition on a ground which applied equally to their own evidence, see OCGA § 9-11-32 (d) (3) (A), would force them into an inconsistent position and serve no useful purpose.

This case differs significantly from the situation in *Andean Mtr. Co. v. Mulkey*, 251 Ga. 32 (1) (302 SE2d 550) (1983). There the objection, relating to the witness' competence to testify as an expert, was the objection of only one side and the deficiency existing at the time of deposition could easily have been remedied by fuller testimony.

On the merits, "[g]enerally, an expert's opinion cannot be stated upon facts or reports which are not admitted in evidence. OCGA § 24-9-67; [cit.]. Thus, in the realm of expert medical testimony it is said: 'Opinion testimony based merely upon records and case history furnished the witness by other doctors and not a part of the evidence in the case is objectionable.' [Cit.]" *Andrews v. Major*, 180 Ga. App. 393, 395 (2) (349 SE2d 225) (1986). However, in this case the critical medical records at issue were not outside the evidence. The hospital documents with respect to the allegations of negligence against Soder and the professional corporation, i.e., Soder's written evaluations of the first and second CT scans, were introduced as exhibits. Thus the other hospital records, which were not in evidence, were not material to the expert's opinion.

In argument, appellants raise three additional complaints. One is that the admission of the testimony was unfair because the trial court excluded certain of their direct examination of Stanton on the same evidentiary objection. A second is that the testimony lacked competency foundation. The third is that the testimony was harmful because it created the improper impression that Stanton supported Soder's position.

What is applicable at the threshold is that "[i]t is basic appellate practice that error argued in the brief but not enumerated as error will not be considered on appeal [cit.]. . . ." *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 550 (340 SE2d 207) (1986).

Considering the merits of the additional arguments nevertheless, they fail.

As to the first, no legal support is given.

As to the second, the claim is lack of foundation of qualifications. Although Stanton admittedly was a vascular surgeon and not a radiologist nor an orthopedist, he testified that he had a "fair amount of experience" in reading CT scans and "understanding the differences of expressed retroperitoneal bleeding." The claimed lack of sufficient foundation for Stanton's giving an expert opinion fails because this would go to the testimony's weight rather than its admissibility. See, e.g., *Longino v. City of Atlanta*, 127 Ga. App. 299, 300 (193 SE2d 190) (1972), which applies the principle in the context of opinion as to market value of real property.

As to the third, the impact of the testimony, i.e., favorable or adverse to Soder, was for the jury to determine.

2. Appellants contend that the trial court erred in charging the jury, "It is the general law of this state that laymen, even jurors and courts, are not permitted to say what is proper medical diagnosis and treatment." Appellants maintain that this language misstates the law and would obviate any basis for the trial of a medical negligence action in Georgia.

They argue that there are cases in which as a matter of law it is acknowledged that laymen can determine that medical treatment is negligent, the so-called "pronounced result" cases, citing *Landers v. Ga. Baptist Med. Center*, 175 Ga. App. 500 (333 SE2d 884) (1985). Appellants, however, do not contend that this is a situation of "pronounced result." At trial, they did not submit any request to charge on such theory.

The language at issue must be evaluated in the context of the charge as a whole. See *Russell v. Wickes Lumber*, 190 Ga. App. 16, 18 (7) (378 SE2d 148) (1989); *Smaha v. Moore*, 193 Ga. App. 23, 24 (387 SE2d 13) (1989). The immediately preceding portion of the instruction, which appellants acknowledge is an accurate statement of the law, was: "The care and skill applicable in performing medical services are not matters within the common knowledge or experience of jurors or lay persons. These standards are within the special knowledge of experts in the field of medicine and are to be proven only by the testimony of expert medical witnesses."

Thus, in the context of that complete portion of the instruction, the objected-to language merely reiterates and reinforces the correct principle that the appropriate medical standard is the province of the medical expert.

Moreover, it is not misleading in the context of the court's entire charge to the jury. Later when dealing with proximate cause there was further clarification, not objected to by appellants, that "[l]ay persons, even jurors and courts, are not permitted to set up and use any arbitrary or artificial standard or measurement they might wish to apply. The proper standard of measurement is to be established by

the testimony of medical experts. For that is a medical question."

The instruction at issue, in context, is a correct statement of the law and does not usurp the province of the jury.

*Judgment affirmed. Sognier, C. J., and Carley, P. J., concur.*

DECIDED SEPTEMBER 30, 1991.

*Bennett, Williams & Henry, Michael T. Bennett*, for appellants.

*Sullivan, Hall, Booth & Smith, Rush S. Smith, Jr., Brynda S. Rodriguez, Long, Weinberg, Ansley & Wheeler, Robert G. Tanner*, for appellees.