The AUSTIN COMPANY & Cigar Supply Company, Plaintiffs–Appellants,

v.

ROYAL INSURANCE COMPANY, Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section.

April 30, 1992.

Application for Permission to Appeal Denied by Supreme Court Nov. 23, 1992.

Jerry W. Laughlin, Greeneville, for plaintiffs-appellants.

Thomas L. Kilday, Milligan & Coleman, Greeneville, for defendant-appellee.

## OPINION

FRANKS, Judge.

The insured appeals from the Chancellor's decision that the insurance company was authorized to settle a claim and the decision to settle was made in good faith.

The Chancellor's findings are supported by a preponderance of the evidence, and we adopt from his opinion:

"This suit is between the Austin Company and one of its wholly-owned subsidiaries against its liability insurance carrier, the Royal Insurance Company. For the sake of convenience, the plaintiffs hereafter will be referred to in the singular.

Plaintiff purchased a 'retrospective premium' liability insurance policy from Royal, which policy insured various risks, including workers' compensation, automobile liability, and general liability.

The 'retrospective premium' policy is a policy whereby the premiums are calculated, at least in part, on the basis of the claims experience or history for the preceding year or premium period. In other words, the premiums are calculated after the fact, not before.

Moreover, this particular policy was what might be described as a hybridized self-insurance contract. Although claims were investigated and administered by the defendant insurance company, the insured (i.e., plaintiff) was responsible for payment of any judgment or settlement under $250,000.00. Royal's responsibility did not begin until that limit of $250,000.00 had been reached for any single claim, and it ended at $1,000,000.00.

Under the policy, Royal was required to investigate claims, defend plaintiff's interests, settle those claims it deemed necessary, and pay any judgments rendered against plaintiff, up to the aforesaid limit of $250,00.00. After paying any settlement or judgment, Royal would submit a bill to plaintiff for the amount of the payment.

This suit resulted over two claims settled by Royal, one over the strenuous objections of plaintiff.... As a result of that lack of consent...., plaintiff seeks to avoid responsibility for repayment to Royal for these settlements.

The policy of insurance is rather lengthy, but there are only two pertinent provisions.

The first provision is in the pre-printed portion of the insurance policy:

[Royal has] the right and duty to defend any suit asking for these damages. However, [Royal has] no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. [Royal] may investigate and settle any claim or suit as [Royal] consider[s] appropriate. [Royal's] payment of the LIABILITY INSURANCE limit ends [Royal's] duty to defend or settle.

This particular provision is unambiguous. It clearly gives Royal the right to take whatever action it deems necessary with regard to any claim made against plaintiff, notwithstanding that, at least up to $250,000.00, it is plaintiff's funds that would be used.

The second provision was a document entitled 'Special Claim Instructions,' which was typed up separately and inserted into the policy of insurance. This addendum reads as follows:

SPECIAL CLAIM INSTRUCTIONS

CONTEMPLATED SETTLEMENTS

The local Royal claim office must consult with Sam McInturff, Risk Manager at the Austin Company prior to any contemplated settlement in excess of $10,000.00. If he should strongly disagree with your (sic) settlement recommendation, contact Tailored Claim Services–Home Office immediately.

This addendum subsequently was amended at plaintiff's request to lower the $10,000.00 figure to $5,000.00.

An automobile accident occurred in North Carolina that resulted in a personal injury suit being filed against plaintiff in the courts of that state in 1985. Royal retained local counsel to defend the suit. In 1989 a judgment was rendered against the insured (plaintiff herein) in the amount of $152,000.00.

Because pre-judgment interest related back to the date of filing of suit, plaintiff was confronted almost immediately with $36,000.00 in interest, meaning the total judgment approached $190,000.00.

Royal wished to settle the case; plaintiff herein vociferously voiced its objections, insisting that the judgment be appealed.

Royal settled the case, over the objections of its insured, for $170,000.00. It then demanded that plaintiff reimburse it for this amount (plus other related expenses) as per the terms of the policy.

Plaintiff has refused to pay, insisting that the last-quoted provision of the policy, which required the insurance company to 'consult with' plaintiff before any settlement was effectuated, was intended to provide that there could be no settlement if the plaintiff-insured objected.

Royal maintains that this provision meant only that Royal was to keep its insured advised as to the progress of settlement negotiations, but, in the event of a disagreement, Royal had the final decision regarding whether or not to settle."

The Chancellor concluded the special claim instructions required the insurer to advise insured about the proposed settlement, to exercise its independent judgment in good faith about the outcome, and the settlement for $20,000.00 less than the total judgment was "prudent and well-reasoned".

■ The language of the policy is not ambiguous. It gives the insurer the right to settle any claim or suit it considers appropriate. For more expensive claims, Royal must "consult" with the insured. Nothing in the language of the agreement supports the insured's claim that it had veto power over the settlement.

■ Due to the $250,000.00 deductible, the insurer was effectively administering the insured's self-insurance claims below that amount. While a claims agent for the insurer explained that the insured had input into the settlement, that input did not translate into veto power, and the insured always retained the right to make the ultimate decision as to settlement. As the Chancellor's analysis implies, the insured's right to exercise its decision-making authority under the contract did not give it license to act in bad faith. A duty of good faith and fair dealing in performance and enforcement is implied in all contracts. *See* Restatement 2d Contracts § 205 (1979).

■ The insured asks us to adopt the rule that the burden is on the insured to prove good faith in effecting a settlement under similar facts, citing *Transport Indemnity Co. v. Dahlen Transport, Inc.*, 281 Minn. 253, 161 N.W.2d 546 (1968). Tennessee cases which discuss the issue of good faith between an insurer and insured assert the burden is on the insured to prove the insurer acted in bad faith. *See e.g., Nelms v. Tenn. Farmers Mutual Ins. Co.*, 613 S.W.2d 481 (Tenn.App.1978). *Also see Silliman v. International Life Ins. Co.*, 135 Tenn. 646, 188 S.W. 273 (1916). This Court has noted that insurance is heavily regulated in this jurisdiction and legal remedies should be narrowly construed. *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn.App.1986). Accordingly, we find no basis to follow the insured's insistence. *See* Tennessee Code Annotated § 56–7–105.

The insured argues it is evidence of bad faith for the attorney for the insurance company to file an appeal and then recommend against pursuing it, and as a condition of continuing the appeal, the insurer wanted the insured to indemnify it, should the judgment exceed the deductible.

Both actions were reasonable and do not establish bad faith. The attorney for the insurer explained that North Carolina has only a ten day window for filing a notice of appeal, and the appeal was filed in part to keep the option to appeal available for both parties. Neither does the proposed agreement to continue the appeal establish bad faith. In exchange for pursuing an appeal where the insurer felt chances of winning were slight and it had the contractual authority to settle, the insurer did not act unreasonably in seeking indemnity from the insured.

The settlement was for $20,000.00 less than the original judgment, and saved steep and rapidly increasing judgment interest. There was no suggestion that the insurer did not adequately represent the insured in the trial, and it was not until the settlement that the insured ever challenged the insurer's authority to settle claims. Most important, the insurer consulted extensively with the insured before making the final decision, and sought the insured's "blessing". Accordingly, the evidence does not preponderate against the Trial Court's findings, T.R.A.P. Rule 13(d); and we affirm the judgment of the Trial Court at appellant's cost.

GODDARD and McMURRAY, JJ., concur.