A94A1957. BENTON EXPRESS, INC. v. ROYAL INSURANCE COMPANY OF AMERICA et al.
(457 SE2d 566)

SMITH, Judge.

Benton Express, Inc. brought a multi-count action against its insurers, Royal Insurance Company of America and Royal Indemnity Company (collectively called "Royal"), seeking a declaration of its liability for additional premiums under its insurance policies and asserting claims for relief based on breach of contract, negligence, breach of the duty of good faith, and violation of the covenant of good faith and fair dealing.[1] Benton sought compensatory and punitive damages. Royal answered and counterclaimed against Benton for breach of contract and bad faith.[2] At the hearing on the motion, the trial court granted Royal's motion for summary judgment from the bench. In a nunc pro tunc order entered several days later, the trial court corrected the amount of the judgment. Benton appeals.

Royal provided insurance coverage for Benton, a trucking company, for many years. During the time period relevant to this appeal,

[1] Benton later amended the complaint to seek an accounting.
[2] Royal later amended the counterclaim to add a claim for relief in quantum meruit.

Royal provided workers' compensation and truckers' commercial liability insurance coverage to Benton for claims up to $100,000 under retrospective premium insurance policies. Under such policies, the insurer adjusts and handles claims against the insured and later charges the insured a premium based upon the claims actually adjusted and paid. All claims over $100,000 were covered under traditional liability policies. To calculate the premium, Royal estimated the value of the claim and Benton's potential liability and established a "reserve" in that amount. It then charged Benton the amount of the reserve. In addition, it charged Benton 14 percent of the established reserve and a premium tax based on the amount of the reserve. If a claim was ultimately concluded for an amount less than the reserve, Royal credited or refunded the difference. The additional charges were not refunded. If, on the other hand, the reserve needed to be increased, Royal would bill Benton for the additional reserve and the requisite charges based on that additional reserve.

In this suit, Benton contended Royal did not properly investigate or handle claims, that it settled claims unreasonably, overpaying claimants, and that it systematically "over-reserved," resulting in excessive unrefunded charges to Benton. In Count 1, the complaint as amended sought a declaration of the rights and duties of the parties. Count 2 alleged breach of contract; Count 3 alleged negligence; Counts 4 and 5 alleged bad faith; Count 6 alleged wilful misconduct and fraud and sought punitive damages; and Count 6 sought an accounting. The trial court granted summary judgment on all claims. We conclude the trial court correctly granted summary judgment to Royal on all counts except Count 2.

1. This appeal presents an issue of first impression in Georgia regarding an insurer's duty of acting in good faith in dealing with retrospective premium policies.

This type of underwriting has both advantages and disadvantages to the insurer. A disadvantage is that if the insured is displeased with the retrospective premium requested, as occurred in this case, the insured may cancel coverage and use its refusal to pay ongoing retrospective premiums as leverage to force the insurer to lower the premiums, knowing that the insurer must still handle the claims made against the insurer. On the other hand, potential exists for the insurer to overcharge the insured.

Although no Georgia cases have addressed an insurer's duty to deal with the insured in this situation in good faith, several other jurisdictions have imposed such a duty on the insurer. See, e.g., *Nat. Surety Corp. v. Fast Motor Svc.*, 572 NE2d 1083 (Ill. App. 1991); *Deerfield Plastics Co. v. The Hartford Ins. Co.*, 536 NE2d 322 (Mass. 1989); *Transit Cas. Co. v. Topeka Transp. Co.*, 663 P2d 308 (Kan. App. 1983); *Ins. Co. of North America v. Binnings Constr. Co.*, 288

S2d 359 (La. App. 1974). We are persuaded by the reasoning of these cases that because of the potential for conflict of interest, in dealing with retrospective premium policies, a duty is imposed upon the insurer to act reasonably and in good faith.

2. A majority of jurisdictions that have addressed this issue also place the burden upon the insurer to show that it acted in good faith. We agree with Benton and with the view of the majority of jurisdictions that because the insurer is in possession of the documents relating to premium calculation and the settlement of claims, the burden should be placed upon the insurer to show that in setting the retrospective premiums, it complied with its duty to act reasonably and in good faith. Compare *The Austin Co. &c. v. Royal Ins. Co.*, 842 SW2d 608 (Tenn. App. 1992) (duty of good faith exists but burden is on insured to show insurer acted in bad faith).

3. Nevertheless, a review of the record also persuades us that the trial court properly granted summary judgment to Royal in this case on Counts 4, 5 and 6.

Benton originally claimed lack of good faith in settling a large number of cases, and 57 files were originally requested in discovery. By the time of the hearing on Royal's motion for summary judgment, Benton had reduced its allegations of bad faith to eight cases, all but one of which are workers' compensation cases. Royal satisfied its burden to show that it acted reasonably and in good faith in these cases through evidence presented in affidavits and deposition testimony. In support of its motion for summary judgment, Royal produced the affidavits of various Royal personnel, including experienced regional claims managers and a senior casualty specialist. This evidence established that these persons were knowledgeable regarding settlement of the particular disputed claims and the setting of reserves. They also testified concerning the factors considered by Royal in setting reserves. Good faith was also demonstrated by Royal's various efforts on Benton's behalf to contain costs. Royal also showed it had waived certain challenges to coverage and cancellation penalties and accepted payments from Benton in installments. Regarding the allegation of "over-reserving," Royal showed it assigned claims to adjusters based upon the severity and complexity of the case, with the most complex cases assigned to the adjusters with the most experience.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If

the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Because Royal satisfied its burden of showing good faith, Benton was then required to come forward with specific evidence rebutting that showing by demonstrating lack of good faith. Benton attempted to do this with the testimony of Don Hammonds, its Vice President of Maintenance and Safety, and an outside expert, Robert Sullivan. A review of this evidence, however, reveals that it was insufficient to rebut Royal's evidence of good faith.

Among other deficiencies, Hammonds has never been employed in the insurance industry and has no underwriting or adjusting experience. He admitted he does not understand how retrospective premiums are calculated. He was unfamiliar with several of the claims. Sullivan is an expert in underwriting, but not in claims management from the insurer's perspective. His deposition reveals that when questioned about the merits of the particular claims or reserves in dispute, he consistently testified that he would need more information than was provided him in order to form an opinion. On cross-examination regarding the eight claims in dispute, Sullivan agreed that they did not adversely affect the experience modifier. He further had no idea how much of the premium charged Benton did not owe. He later supplemented this testimony with another affidavit, after further reviewing the files. More importantly, however, none of the testimony of these experts rebuts Royal's showing.

We agree with the trial court that, at best, Royal's evidence on these counts "could be described as evidence that [Royal] did not bring to bear on the individual case claims that level and degree of expertise that [Benton's] witnesses feel are warranted by the claims. This evidence of disagreement does not give rise to the requisite level of evidence creating a genuine issue of material fact requiring submission to a jury." Accordingly, Royal having pierced allegations essential to Benton's theories of recovery, and Benton having failed to rebut Royal's evidence, summary judgment was properly awarded to Royal on these counts.

4. Although earlier cases support Royal's argument that an insured has no cause of action against its insurer for negligent failure to settle claims, see *Jones v. Southern Home Ins. Co.*, 135 Ga. App. 385, 388 (217 SE2d 620) (1975); *Cotton States Mut. Ins. Co. v. Fields*, 106 Ga. App. 740 (128 SE2d 358) (1962), recent cases seem to suggest the contrary, at least in excess judgment cases. See *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (1) (416 SE2d 274) (1992); *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870 (1) (310 SE2d 513) (1984). Assuming, without deciding, that such a cause of action exists in the context

of retrospective premium policies such as the ones in issue here, we nevertheless agree with the trial court that summary judgment was proper in favor of Royal on Benton's negligence claim.

Royal presented evidence piercing Benton's allegations of negligence and demonstrating its care in handling Benton's premiums and claims. Benton's evidence in response does not rebut this evidence. Accordingly, under *Lau's*, supra, summary judgment was proper on this claim as well.

5. The trial court found that Benton's breach of contract claim rested on its allegations of "over-reserving." In this regard, Sullivan's second affidavit contains some evidence that meets Royal's assertions that its calculations — and the amounts it sought as retroactive premiums — were correct. For instance, Sullivan states that certain items in workers' compensation claims for "rehabilitation" that were charged to claims paid either were incorrect or should have been charged to allocated expenses. According to Sullivan, charging these items to allocated expenses would have reduced the amount of Benton's retrospective premiums by reducing the additional amounts charged Benton on the reserve amounts.

This evidence creates a genuine issue of material fact as to the breach of contract claim; the trial court erred in granting summary judgment in favor of Royal on this count of the complaint.

6. We agree with the trial court that an accounting is unnecessary in this case, where discovery was extensive.

*Judgment affirmed in part and reversed in part. Beasley, C. J., Birdsong, P. J., Andrews, Johnson and Ruffin, JJ., concur. McMurray, P. J., Pope, P. J., and Blackburn, J., concur in part and dissent in part.*

McMurray, Presiding Judge, concurring in part and dissenting in part.

There are at least two aspects to the defendants' handling of claims against plaintiff which are the basis of allegations that defendants have failed to perform in conformity with a good faith standard resulting in a financial detriment to plaintiff. First, plaintiff maintains that defendants have overpaid on certain claims. Since plaintiff's premium obligation on the insurance policies directly corresponds to the actual claims experience, overpayment of claims would add to plaintiff's financial burden for insurance premiums.

Secondly, plaintiff maintained that defendants created excess reserves for claims. When claims were filed a reserve was created by defendants to meet the anticipated costs of the claim. The determination of the amount of the reserve is a subjective decision, more in the nature of an art than science, based on the infinite variables which may affect the value of the claim. Under the policy terms, defendants

charged and plaintiff was to pay a charge based on a percentage (14 percent) of the reserve established, plus a premium tax also based on the amount of the reserve. There was also provision for upward adjustment of reserves which also incurred the charge and premium tax. If the claim was resolved for less than the amount of the reserve, plaintiff was credited with the balance but there was no rebate of the charges on reserves. It is thus readily apparent that the creation of reserves larger than the final value of claims would be disadvantageous to plaintiff while more profitable to defendants.

While I agree with the majority's conclusion that defendants satisfied their burden of showing good faith and concur with Division 5 of the majority opinion reversing the grant of summary judgment in favor of defendants as to plaintiff's breach of contract claim, I cannot join the remainder of the majority opinion. Many additional jury issues are created by the conflicts between defendants' evidence and the opinions of plaintiff's experts. Therefore, I respectfully dissent to the partial affirmance of the grant of summary judgment against plaintiff and in favor of defendants.

To support its claims and to oppose defendants' motion for summary judgment, plaintiff presented the affidavits of two experts who reviewed the records of the claims at issue and opined that they found consistent patterns of overpayment on claims and of creation of excess reserves on claims. Defendants attacked plaintiff's experts on several fronts, challenging the admissibility of their affidavits by questioning their qualifications, impugning their credibility via depositions showing gaps in their knowledge or in the data they reviewed, and by the presentation of the opposing opinions of other experts. Defendants have reasserted on appeal their arguments against the admissibility of the affidavits of plaintiff's experts. However, in my view the affidavits were properly considered since the circumstances raised by defendants and adopted by the majority as a basis for refusing to consider the opinions of plaintiff's experts would affect credibility rather than admissibility. *Krause v. Vance*, 207 Ga. App. 615, 616 (1) (428 SE2d 595); *Morrison v. Koornick*, 201 Ga. App. 367, 368 (1), 370 (411 SE2d 105); *Southern R. Co. v. Montgomery*, 192 Ga. App. 308, 310 (2), 311 (384 SE2d 907).

To the extent that there was some disagreement between the experts as to the reasonableness of the reserve amounts set by defendants or as to other aspects of defendants' handling of the claims against plaintiff, this alone did not present a genuine issue of material fact in regard to whether defendants had exercised good faith in the handling of the claims. Bad judgment or negligence without more does not amount to bad faith. Bad faith involves actual or constructive fraud, a design to mislead or deceive another, or a neglect or refusal to fulfill some duty, not prompted by honest mistake, but by

some interested or sinister motive. *Michaels v. Gordon*, 211 Ga. App. 470, 473 (2) (b) (439 SE2d 722).

The primary declaration from plaintiff's experts suggesting bad faith is their assertion that the claims records show a consistent pattern of conduct by defendants in creating excessive reserves or otherwise mishandling the claims against plaintiff by overpaying. A pattern of conduct of some duration may support inferences which may not reasonably be drawn from a single incident. Thus, the repetition of a result detrimental to plaintiff and beneficial to defendants might suggest a dishonest purpose or conscious wrongdoing under the circumstances at issue in the case sub judice.

Nonetheless, after having its experts review defendants' records of many claims during discovery, plaintiff continually reduced the number of claims upon which it relied to support its position in this litigation. This process continued until at the motion hearing, plaintiff's counsel announced that plaintiff was relying upon only ten or fewer claims from among the hundreds of claims against plaintiff handled by defendants during the relevant period of time. Although this group of claims was not randomly selected and is small in size, I am unable to conclude that it is insufficient as a matter of law to support plaintiff's position. Thus, I would hold that the state court erred in concluding that plaintiff lacked proof of bad faith on the part of defendants.

I am authorized to state that Presiding Judge Pope and Judge Blackburn join in this opinion.

DECIDED MARCH 31, 1995 —
RECONSIDERATION DENIED APRIL 27, 1995 — 

*Carr, Tabb & Pope, W. Pitts Carr, David H. Pope,* for appellant.
*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier,* for appellees.