NATIONAL SURETY CORPORATION, Plaintiff-Appellant and Cross-Appellee, v. FAST MOTOR SERVICE, INC., Defendant-Appellee and Cross-Appellant.

First District (5th Division)   No. 1—90—1320

Opinion filed May 3, 1991.

Sanders, Smith & Cross, of Chicago (John N. Dore and Claudia J. Sanders, of counsel), for appellant.

Kurt G. Beranek and Michael F. Bonaguro, both of Fraterrigo, Best & Beranek, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, National Surety Corporation (National), appeals from an order of the Cook County circuit court, dated September 12, 1989, in which judgment was entered against it and in favor of Fast Motor Service, Inc. (Fast Motor), in the amount of $75,000. Fast Motor cross-appeals the denial of its motion for attorney fees and costs.

Fast Motor is a trucking firm engaged in the business of local and interstate freight transportation. Pursuant to its license, Fast Motor is required to maintain policies of insurance to cover claims that might be filed against it for workmen's compensation, personal liability or property damage. Upon the advice of its insurance broker, Sentinel Insurance Agency, Fast Motor purchased these policies of insurance from National, initially for a term from 1977 through 1979, and then rewritten for the term of February 1, 1979, through February 1, 1982. The policies of insurance issued by National contained a retrospective premium feature, that is, the cost of premiums was determined using an "experience modifier," allowing for the premiums to be adjusted annually based upon Fast Motor's prior years' losses or "claim experience."

In 1979-80 a dispute arose between National and Fast Motor. Fast Motor disagreed with National's settlement of small claims, believing that they were being overpaid and, thus, causing additional premiums due. Effective February 1, 1980, Fast Motor cancelled all its policies of insurance with National, except the workmen's compensation policy, which was extended upon Fast Motor's request until February 16, 1980. Using retrospective premium adjustment calculations, National determined that the premium due from Fast Motor for the period of February 1, 1979, through February 16, 1980, was $143,217. A bill for this amount was sent to Fast Motor, along with an "audit premium" for additional monies due for the period of February 1, 1980, through February 16, 1980, in the amount of $9,761. A partial pay-

ment of $35,000 was made by Fast Motor. However, the remaining amounts were never paid.

On August 17, 1982, National filed a two-count complaint against Fast Motor, alleging in count I a breach of contract and in count II an account stated, seeking damages in the amount of $108,117, plus costs and interest. On November 23, 1982, Fast Motor filed an answer, generally denying all material allegations in the complaint. A counterclaim was also filed at this time.

In the counterclaim Fast Motor alleged that National, by agreeing to provide a policy of insurance to Fast Motor, obligated itself to "use ordinary and reasonable care" when investigating and adjusting claims filed against Fast Motor and that National was negligent in the exercise of its responsibility by failing to properly investigate claims, failing to obtain wage statements, failing to obtain witness statements, overreserving claims, and overpaying claims. Fast Motor further alleged that, based upon National's negligence, it had been charged higher premiums and would be forced to incur higher premiums in the future due to the "distorted loss experience" calculated from the excessive claims paid.

On December 9, 1982, National moved to strike the counterclaim for vagueness, and on February 7, 1983, the trial court entered an order striking Fast Motor's countercomplaint with leave to amend within 28 days. No amended counterclaim was ever filed and so, on October 31, 1984, National filed a motion with the trial court requesting a final order dismissing the counterclaim with prejudice. On December 12, 1984, the trial court entered an order stating that National's motion for dismissal was granted. Although the order did not specifically state that the dismissal was "with prejudice," the order entered also denied Fast Motor's motion for leave to file an amended counterclaim. Fast Motor filed a petition for rehearing on the trial court's ruling with respect to the counterclaim in January 1985. The motion was denied on February 27, 1985.

On March 13, 1985, Fast Motor filed a complaint against National and Fireman's Fund Insurance Company. Service of summons as to Fireman's Fund was quashed, and Fast Motor's case proceeded only against National. The complaint contained the identical allegations as set forth in Fast Motor's original counterclaim except that it now sounded in contract. That is, rather than alleging that National was negligent, Fast Motor now alleged that National had breached its duty under the contract of insurance with Fast Motor by failing to properly investigate and evaluate the claims filed against Fast Motor and by overreserving and overpaying claims.

National moved to dismiss the complaint as barred by the doctrine of *res judicata,* based on the prior counterclaim's dismissal with prejudice. This motion was denied by an order dated July 8, 1985. National also moved to strike Fast Motor's complaint for failure to state a cause of action. This motion, too, was denied. Fast Motor moved to consolidate its cause of action with the original cause of action brought by National, and this motion was granted by an order entered February 26, 1987. A jury trial was finally commenced on the consolidated cases on September 6, 1989.

After all the evidence was heard and both parties rested their case, Fast Motor sought leave to file an affirmative defense to the complaint filed by National. This motion was granted. The affirmative defense filed by Fast Motor contained the same allegations as set forth in its complaint against National. The jury was then instructed and, after deliberations, found in favor of Fast Motor in both causes of action. Additionally, the jury awarded Fast Motor damages in the amount of $75,000 in its cause of action against National. The trial court denied National's post-trial motions and Fast Motor's motion for costs and fees. National filed an appeal from the jury verdict, and Fast Motor filed a cross-appeal from the denial of fees.

On appeal National contends that (1) the trial court erred by failing to dismiss Fast Motor's complaint; (2) that the trial court erred by allowing Fast Motor to file an affirmative defense after all the evidence had been presented at trial; (3) that the trial court erred by allowing Fast Motor's witness, Mr. Walker, to testify as an expert; (4) that the jury was not properly instructed; (5) that the judgment in favor of Fast Motor was against the manifest weight of the evidence; and (6) that the trial court erred by failing to enter judgment in its favor notwithstanding the verdict, or in the alternative, a new trial.

With regard to plaintiff's first issue, we find that the trial court did not err by refusing to dismiss Fast Motor's complaint on the grounds of *res judicata.* This is because the trial court erred, in the first instance, by dismissing "with prejudice" the counterclaim filed by Fast Motor.

■ A review of the record reveals that the motion brought by National for dismissal of the counterclaim, and the trial court's grant of the motion, was based upon Fast Motor's failure to amend its counterclaim. As such the dismissal should have been without prejudice, since such a dismissal is deemed to be a dismissal for want of prosecution. See *Kraus v. Metropolitan Two Illinois Center* (1986), 146 Ill. App. 3d 210, 496 N.E.2d 1080.

However, a more difficult question is whether the complaint should have been dismissed for failure to state a cause of action. National contends that there was no express duty within the contract of insurance with Fast Motor to adjust claims in accordance with any set industry standards and that Fast Motor failed to state a cause of action because it alleged a breach of a duty that did not exist. Fast Motor, on the other hand, contends that, despite the broad discretion given to insurers in settling claims, there exists an implied duty of reasonableness and good faith, especially when the insurer's exercise of its discretion has ramifications for the insured.

There is no case law in Illinois which addresses an insurer's duty to its insured in the context of an insurance policy containing a provision for retrospective premiums based upon loss experience. However, Fast Motor argues that imposing a duty of good faith and fair dealing in these instances is a reasonable extension of established Illinois law and should be adopted in this State, as has already been done in other States. We agree.

It has long been established in Illinois that an insurer owes his insured an implied-in-law duty of good faith and fair dealing (*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 348, 330 N.E.2d 540) and that a cause of action exists when an insurer breaches his duty of good faith by wrongfully failing to settle an insurance claim within the policy limits. (See *Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16; *Brocato v. Prairie State Farmers Insurance Association* (1988), 166 Ill. App. 3d 986, 520 N.E.2d 1200.) The rationale for this cause of action is that the insurer's failure to settle within the policy limits subjects the insured to excess liability.

Likewise, an insured should be able to state a viable cause of action for breach of an insurer's duty of good faith based on the insurer's failure to act reasonably when adjusting claims under a policy of insurance which contains a retrospective premium feature notwithstanding the fact that the policy of insurance contains no express provisions imposing such a duty. This court realizes that, in general, an insurance company is given broad discretion in adjusting claims as long as the settlement does not exceed policy limits. (*Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 216 N.E.2d 198.) However, the general rule is irrelevant here, where the policy limits are not a set figure. When an insurance policy contains a retrospective premium feature, an insurer's failure to act reasonably when adjusting claims automatically subjects the insured to greater financial obligations in the form of increased premium rates.

Such a cause of action has already been recognized in other jurisdictions. In *Deerfield Plastics Co. v. Hartford Insurance Co.* (1989), 404 Mass. 484, 536 N.E.2d 322, the insured (Deerfield) brought suit against the insurer (Hartford) to recover certain premium charges it paid under a workers' compensation insurance policy with a retrospective premium endorsement, contending that Hartford negligently investigated, set a reserve, and settled an industrial accident claim, thereby causing Deerfield to incur substantially increased premium obligations under the retrospective rating plan. The court held that once Deerfield produced evidence that Hartford had been negligent in handling the claim and that, because of the retrospective rating scheme, this negligence could have had an adverse monetary effect on Deerfield's insurance premium, it was Hartford's burden to prove that the settlement made on the claim did not exceed the highest reasonable amount at which the claim would have probably been settled if it had been investigated properly.

Citing to decisions reached by two other courts under similar circumstances as support, *Transit Casualty Co. v. Topeka Transportation Co.* (1983), 8 Kan. App. 2d 597, 663 P.2d 308, and *Transportation Indemnity Co. v. Dahlen Transport, Inc.* (1968), 281 Minn. 253, 161 N.W.2d 546, the court in *Deerfield Plastics* reasoned that: "[The insurer] should not be allowed to retain the payments in issue unless it shows that it is entitled to them under its policy of insurance and that it has met its obligation, imposed by law, to act reasonably in making settlements where the money of the insured is involved." *Deerfield Plastics*, 404 Mass. at 487, 536 N.E.2d at 324.

We, too, adopt this rationale and hereby hold that a cause of action is stated when an insured sues his insurer for a breach of duty for settling claims in an unreasonable manner when the policy of insurance contains a retrospective premium feature. Furthermore, since the facts concerning the breach of the duty of good faith may constitute either a tort or a breach of contract (see *Ledingham*, 29 Ill. App. 3d 339, 330 N.E.2d 540), a plaintiff may choose to bring suit in either tort or contract.

■ Based upon our findings above, Fast Motor's complaint filed against National for breach of contract, asserting National's failure to investigate claims and its course of conduct in overreserving and overpaying claims, stated a cause of action and the trial court did not err by denying National's motion to strike the complaint. For the same reason, we also find that the trial court did not err by denying National's motions for directed verdict and judgment notwithstanding the verdict. Contrary to its assertions, National did not prove its case

against Fast Motor once it proved that a contract for insurance existed and that there was an amount of premiums due under that contract of insurance. Once Fast Motor placed into issue the reasonableness of the claim settlements made by National pursuant to that contract of insurance, National was required to prove its entitlement to the premiums charged.

■■ Also, we reject National's contention that Fast Motor's cause of action amounts to a collateral attack of the Industrial Commission's approval of the workmen's compensation claims. The only case cited to by National for this proposition, *Dyer v. Industrial Comm'n* (1936), 364 Ill. 161, 4 N.E.2d 82, is clearly distinguishable. In *Dyer* the plaintiff refused to make payments on a workmen's compensation settlement agreement, denying the validity of the agreement only after the insurance company became insolvent. There was no indication that the plaintiff in that case was charging the insurer with having settled the claim in bad faith, nor did the insurance policy involve a retrospective premium feature. Furthermore, it is unclear to what extent the Industrial Commission conducted proceedings on any of the challenged workmen's compensation claims which were at issue in the case at bar.

■■ Next we find that the trial court did not err by allowing Fast Motor to amend its answer to National's complaint at the close of proofs. The Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—616) provides that a pleading may be amended at any time before final judgment. Whether to allow such an amendment is left to the sound discretion of the trial court. (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272.) Barring unfair prejudice or surprise to the other party, the trial court may exercise its discretion by allowing a party to amend its answer to include an affirmative defense. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274.) In this case, the allegations in the affirmative defense were identical to the allegations raised in Fast Motor's cause of action against National, which had been consolidated with National's case against Fast Motor. Thus, National cannot reasonably claim that it was surprised or prejudiced by the affirmative defense. Therefore, we find that the trial court did not abuse its discretion by allowing Fast Motor to amend its pleading after all the evidence was heard to assert the affirmative defense.

We shall now address National's remaining issues concerning the admission of evidence and jury instructions. First, National contends that it was denied a fair trial because the trial court admitted certain testimony given by Fast Motor's expert, Mr. Walker, into evidence.

After reviewing the arguments raised on appeal, we find it difficult to determine the exact nature of National's objections to Walker's testimony. National appears to question the qualifications of this witness to express some of the opinions given at trial and cites to cases that stand for the general proposition that experts must be shown to be competent to testify and that the underlying data relied upon has an objective degree of reliability. However, National fails to specify its objections to Mr. Walker and, instead, argues generally that Mr. Walker was given too much leeway and "allowed to roam verbally" in his testimony at trial. We are unpersuaded by National's arguments.

■■ Whether a witness qualifies as an expert is a question left to the sound discretion of the trial court, whose decision will not be overturned unless it is shown to be a gross abuse. (*Norman v. American National Fire Insurance Co.* (1990), 198 Ill. App. 3d 269, 555 N.E.2d 1087.) A witness may be qualified as an expert based upon his knowledge, skill, experience, training or education. (*Hopkinson v. Chicago Transit Authority* (1991), 211 Ill. App. 3d 825.) Once it is shown that the witness possesses specialized knowledge beyond that of the average person on a fact matter related to the litigation, the witness may be qualified as an expert. (*Byrne v. SCM Corp.* (1989), 182 Ill. App. 3d 523, 538 N.E.2d 796.) An expert witness may then testify as to his opinions based upon assumptions if they are supported by facts or reasonable inferences. *Hopkinson v. Chicago Transit Authority*, 211 Ill. App. 3d 825.

■■ In the present case Fast Motor established that Mr. Walker had expertise in the area of claims auditing and that he had been hired to conduct an audit of the insurance claims adjusted by National. It was shown that Walker was the president of a company which was in the business of conducting such audits for commercial enterprises, that his education was in business administration and that he possessed more than 20 years' experience in claims adjusting. Based on these qualifications, we find that the trial court did not err in finding Mr. Walker capable of testifying as an expert. Certainly Mr. Walker possessed more specialized knowledge than the average person regarding the handling of insurance claims and their settlement.

Nor do we find that National was denied a fair trial by the admission of Mr. Walker's testimony. National objects to certain testimony on the ground that Walker based his opinions on assumptions. However, this was proper since the assumptions were based upon Walker's knowledge, training and experience concerning the manner in which claims are handled. We note, too, that in some instances the particular testimony National specifies as objectionable, the record reveals that

the trial court sustained National's objections made at trial disallowing the evidence. For all the reasons stated above, we find that Walker was qualified to give expert testimony and the trial court did not err in so finding. Nor was National denied a fair trial because of the testimony given by Walker.

National's final issue concerns the jury instructions. National contends that the instructions tendered by Fast Motor and given to the jury were improper because they did not adequately set forth the principles of law or burdens of proof applicable to the cases before the jury. We disagree.

■ The ultimate test for jury instructions is whether they provide a clear and adequate picture of the applicable law when viewed in their entirety. (*First National Bank v. Illinois Central Gulf R.R. Co.* (1978), 62 Ill. App. 3d 36, 378 N.E.2d 1329.) We find that the instructions given to the jury, viewed in their entirety, adequately appraised the jury of the law on the issues that were to be decided. The instructions tendered by National were properly refused by the trial court because they were repetitious of instructions tendered by Fast Motor and overly wordy, having included matters that were no longer at issue and, thus, could have been confusing to the jury.

■ Finally, we consider Fast Motor's cross-appeal for fees and costs. Fast Motor contends that the trial court's refusal to award attorney fees was against the manifest weight of the evidence. We disagree.

Fast Motor argues that attorney fees were available pursuant to statute. (Ill. Rev. Stat. 1987, ch. 73, par. 767.) However, the statute cited by Fast Motor provides:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling the claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts ***." Ill. Rev. Stat. 1987, ch. 73, par. 767.

First of all, it does not appear to this court that the action here falls squarely within the provisions of this statute. However, even if we were to hold that Fast Motor's cause of action for breach of contact for failure to properly adjust claims did fall within this section of the statute, whether to allow attorney fees and costs is a decision left to the sound discretion of the trial court. (*Songer v. State Farm Fire*

& *Casualty Co.* (1982), 106 Ill. App. 3d 141, 435 N.E.2d 948.) We believe that the trial court's decision to deny attorney fees was not an abuse of discretion. The fact that the jury found that National breached its duty to Fast Motor need not require the trial court to find that National's conduct was vexatious.

For all the reasons stated above, we affirm the judgment entered in favor of Fast Motor and against National, as well as the order denying Fast Motor's motion for attorney fees and costs.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.