LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation

v.

MARTY'S EXPRESS, INC. and Falcon Express, Inc.

Civil A. No. 95–962.

United States District Court, E.D. Pennsylvania.

Jan. 3, 1996.

Edward A. Greenberg, Morton F. Daller, Dennis R. Callahan, and Charles E. Pugh, Daller, Greenberg and Dietrich, Ft. Washington, PA, for Plaintiffs.

Louis W. Fryman, Ronald J. Shaffer, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, and Douglas Evan Ress, Kaufman, Coren & Ress, Philadelphia, PA, for Defendant.

## MEMORANDUM

DALZELL, District Judge.

This case presents an issue of first impression in Pennsylvania: in an action for unpaid premiums allegedly due on a retrospectively-rated insurance policy, must an insurer prove that it acted reasonably and in good faith in handling claims subject to such retrospective premium adjustment? We predict that the Pennsylvania Supreme Court, if faced with this issue, would place upon the insured the burden of producing sufficient evidence to suggest that the insurer violated an implied obligation of acting reasonably and in good faith in handling claims, but would place upon the insurer the ultimate burden of persuading the jury that it acted reasonably and in good faith.

### I. Factual History

Plaintiffs (collectively "Liberty Mutual") are in the business of providing various types of insurance coverage, including the retrospectively-rated workmen's compensation policies that are at issue in this case. Defendants are in the motor freight transportation business, although Marty's Express, Inc. is primarily a U.S. Customs Bonded Carrier operating locally in the Philadelphia area and Falcon Express, Inc. is a regional carrier in the truckload transportation business.[1] Sometime before 1986, the parties entered

into a series of retrospectively-rated workmen's compensation insurance contracts. Plaintiffs commenced this action on February 17, 1995 against the insureds, Marty's Express, Inc. and Falcon Express, Inc., to collect premiums allegedly due. Defendants counterclaimed on seven counts, claiming that Liberty Mutual breached its obligation to act in good faith in handling claims. We have jurisdiction over this action because the parties are diverse and the amount in controversy far exceeds $50,000.[2] 28 U.S.C. §§ 1332(a)(1), (c)(1).

Marty's Express has moved *in limine* to require plaintiffs to establish as an element of their case-in-chief that their settlements of defendants' claims were made in good faith and were reasonable in amount. Alternatively, defendants ask us to rule that they have only the initial burden of going forward with sufficient evidence to create an issue as to whether plaintiffs complied with their duties of good faith and reasonableness, at which point Liberty Mutual would bear the burden of persuading the jury that it acted in good faith and that each settlement was reasonable. We shall grant the motion.

### II. Legal Analysis

■ Our Court of Appeals has previously explained the distinctions between retrospective and standard workmen's compensation policies:

> A retrospective premium policy, unlike a standard insurance policy, provides for retrospective determination of the insured's premium obligations according to a formula based on the cost of claims actually paid by the insurer under the policy. A standard workmen's compensation policy requires payment of a fixed premium, which

---

1. Marty's Express, Inc. and Falcon Express, Inc. claim to be "different companies, having different addresses, different employees, different management, separate financial statements, separate insurance policies, and separate employer identification numbers", although "there is some overlapping ownership between the minority shareholders of Marty's and the shareholders of Falcon". Answer ¶ 41. Notwithstanding this assertion of separate juridical entities, for convenience's sake we shall occasionally refer to defendants together as "Marty's Express".

2. Plaintiffs all have their principal places of business in Massachusetts and two of the companies were incorporated there and one in Delaware. Defendants were incorporated in Pennsylvania and maintain their principal places of business here. Plaintiffs seek $503,906.16 in unpaid premiums from defendants in their complaint, although by Order earlier today, we granted plaintiffs' motion to file a supplemental complaint that reflects the current amount of premiums plaintiffs contend defendants owe.

may be calculated in part with reference to the insured's past losses; under a retrospective premium policy, the premium varies according to the current, rather than historical, experience. The retrospective policy establishes minimum and maximum premiums to be paid, and it states the standard premium that would be charged under an equivalent standard policy. The minimum is computed as a fraction of the standard premium.

*Alexander & Alexander, Inc. v. Rose*, 671 F.2d 771, 773 (3d Cir.1982). *Alexander & Alexander* unfortunately did not discuss allocation of burdens of proof, however, and, as the parties recognize, no court in Pennsylvania, either federal or state, has addressed this issue.

Because our jurisdiction is premised upon the diversity of the parties, under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we of course must predict what the Pennsylvania Supreme Court would do if faced with this issue, which occasionally can be a most difficult undertaking as our Court of Appeals recently noted again in *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 293 n. 1 & 302–03 (3d Cir.1995) (listing instances where our Court of Appeals incorrectly predicted state law) (citing Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671 (1992). Our *Erie* inquiry is made especially vexing in the absence of any Pennsylvania authority.

Defendants cite a number of cases from other jurisdictions, including the highest courts in four states, that have imposed upon an insurer the burden of proving that its claims handling of retrospective policies was proper and that its settlements were made in good faith and were reasonable in amount.[3] We find their logic generally persuasive and, more importantly, predict that the Pennsyl-

vania Supreme Court would, too. We believe the Pennsylvania Supreme Court would find the Maryland Court of Appeals' opinion in *Port East Transfer, Inc. v. Liberty Mutual Insurance Co.*, 330 Md. 376, 624 A.2d 520 (1993) as persuasive as we do.

In *Port East*, Liberty Mutual Insurance Company, the same insurer involved here, and Port East Transfer, Inc. entered into a number of insurance contracts, some of which provided for retrospective premium adjustments. At the end of the term of the contracts, Liberty Mutual demanded additional premiums based on its retrospective calculations. After the insured balked at paying, Liberty Mutual filed suit in federal district court alleging breach of contract and money due on an account stated between the parties. The insured filed a motion for judgment on the pleadings, contending that " 'Liberty Mutual has not alleged that the settlements it made, and upon which the premiums were based, were made in good faith and were reasonable.' " 624 A.2d at 521. The trial court converted the motion to one for summary judgment and, given the dearth of precedent in Maryland, certified the following question to the Maryland Court of Appeals: "Whether, in an insurer's action for unpaid retrospective premiums, the reasonableness and good faith of the insurer in connection with claims subject to such retrospective premium adjustments is an essential element of the claim?" *Id.* at 522.

The Maryland Court of Appeals began its analysis by canvassing some of the existing authority, including the seminal case of *Transport Indemnity Co. v. Dahlen Transport Inc.*, 281 Minn. 253, 161 N.W.2d 546 (1968). Noting the potential conflict of interest that faces an insurer that issues a retrospective premium policy, the court stated:

> . . . Liberty Mutual was confronted with potentially conflicting interests when it

---

**3.** *See Port East Transfer, Inc. v. Liberty Mut. Ins. Co.*, 330 Md. 376, 624 A.2d 520 (1993); *Corrado Bros., Inc. v. Twin City Fire Ins. Co.*, 562 A.2d 1188 (De.1989); *Deerfield Plastics Co. v. Hartford Ins. Co.*, 404 Mass. 484, 536 N.E.2d 322 (1989); *Transport Indem. Co. v. Dahlen Transp. Inc.*, 281 Minn. 253, 161 N.W.2d 546 (1968); *Benton Express, Inc. v. Royal Ins. Co. of Am.*, 217 Ga.App. 331, 457 S.E.2d 566 (1995); *National Sur. Corp.*

*v. Fast Motor Serv.*, 213 Ill.App.3d 500, 157 Ill. Dec. 619, 572 N.E.2d 1083 (1991); *Transit Cas. Co. v. Topeka Transp. Co.*, 8 Kan.App.2d 597, 663 P.2d 308 (1983); *Insurance Co. of N. Am. v. Binnings Constr. Co.*, 288 So.2d 359 (La.Ct.App. 1974). Defendants also cite limited contrary authority as well. *Austin Co. v. Royal Ins. Co.*, 842 S.W.2d 608 (Tenn.Ct.App.1992).

handled claims against Port East that were covered by a retrospective premium policy. There may have been, as Port East suggests, a temptation to act somewhat more cavalierly when spending someone else's money than when spending its own. Moreover, there may have been a temptation toward generosity when the insurer's fee increased with each dollar paid out.

*Id.* 624 A.2d at 524. This conflict, however, did not relieve the insured of coming forward with *some* evidence of bad faith. Quoting the Louisiana Court of Appeals, *Port East* stated that "to require the insurer, in the absence of any evidence of bad faith, to offer proof of its good faith in investigating, adjusting, and settling hundreds of claims in order to prove its action for premiums, 'would abuse both the parties and the judicial system.'" *Id.* (quoting *Insurance Co. of N. Am. v. Binnings Constr. Co.*, 288 So.2d 359, 362 (La.Ct. App.1974)).

We agree with *Port East* that this regime of burden allocation best provides adequate protection for the insured, but will not needlessly burden the insurer or the court with protracted proceedings and production of evidence concerning matters not legitimately at issue. We therefore predict that the Pennsylvania Supreme Court would adopt the reasoning of *Port East* if faced with this issue.

Plaintiffs raise three arguments in opposition to the motion. First, Liberty Mutual contends that Pennsylvania courts place the burden of proof on the party having the affirmative of a proposition. Second, the insurers claim that Pennsylvania law on analogous "bad faith" claims demonstrates that the mere potential for an insurer's conflict of interest does not relieve the insured of its burden of proving its claims of bad faith and unreasonableness in handling and settling claims. Finally, plaintiffs argue that the cases defendants cite are either distinguishable or contrary to Pennsylvania law.

While as a general proposition it is true that Pennsylvania courts (as most courts do) place the burden of proof on the party having the affirmative of a proposition is certainly a correct statement of the law in Pennsylvania, this generality does not aid our analysis because it depends entirely on the nomenclature used; to this extent, it is necessarily circular.

■ Second, the Pennsylvania bad faith cases upon which plaintiffs rely are clearly inapposite. The bad faith cause of action was created by the General Assembly following the Supreme Court's decision in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981), holding that there was no common law remedy for bad faith on the part of insurers. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir.1994). In order to prevail, an insured must prove bad faith on the part of the insurer by clear and convincing evidence. *Id.* (citing *Cowden v. Aetna Cas. & Sur. Co.*, 389 Pa. 459, 134 A.2d 223, 229 (1957)). The basis for this heightened standard, however, is not just that a potential conflict of interest exists, but the inflammatory nature of an allegation of bad faith, "conduct [that] imports a dishonest purpose and means a breach of a known duty ... through some motive of self-interest or ill will". *Id.* at 751 (quoting *Black's Law Dictionary* 139 (6th ed. 1990)). Unlike in a retrospective premium policy, there is no inherent conflict of interest involved in a standard policy. Moreover, the conflict of interest that exists in every retrospective policy, contrary to Liberty Mutual's assertion, is qualitatively different from, and greater than, the conflict present in cases where an insurer must determine whether to tender policy limits in response to a third-party claim. In the words of the Court's appointed expert in this case, Dr. Jean Lemaire, professor of insurance and actuarial science at the University of Pennsylvania's Wharton School of Business, "[w]ith a retrospective plan, any improperly managed claim has an adverse impact on the employer's insurance costs. Therefore, insurers have an additional responsibility to investigate and settle every claim professionally and efficiently." December 22, 1995 Report from Dr. Jean Lemaire at 15.

Last, plaintiffs' argument that the cases defendants cite are either distinguishable or contrary to Pennsylvania law does not advance their contention. Even if the factual

scenarios of the cited cases are different than the one at bar, we believe that the rationales employed are persuasive, particularly given the teaching Dr. Lemaire has shared with us in his lucid report. Where a premium is recalculated based upon a multiple of the amount of actual claims paid, an insurer has an inherent financial interest in paying out as much as possible in order to inflate its return. Because of the "temptation" this conflict of interest presents, *Dahlen Transport, supra*, we believe that the burden is best placed upon the insurer to prove that it acted reasonably and in good faith in an action to collect those unpaid premiums.

Accordingly, we shall grant defendants' motion. An appropriate Order follows.

### ORDER

AND NOW, this 2nd day of January, 1996, upon consideration of defendants' motion *in limine* with respect to the burden of proof, and the response thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. The motion is GRANTED;

2. Defendants bear the burden of producing evidence that plaintiffs violated their implied duty to act reasonably and in good faith in handling claims; and

3. If defendants produce evidence that plaintiffs mishandled a claim, then plaintiffs bear the burden of persuading the jury that they acted in good faith in handling that claim and that the settlement of the claim was reasonable.