LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff / Counter–Defendant,

v.

TRIBCO CONSTRUCTION COMPANY, McColl Construction Company, and Tribco/Riteway Joint Venture, Defendants / Counter–Plaintiffs.

No. 94 C 1366.

United States District Court, N.D. Illinois, Eastern Division.

March 22, 1999.

534

William M. Hannay, Scott C. Tomassi, Francine Norz Tobin, David Fredrick Jacobs, Michael Neil Lloyd, Steven Clayton Benz, Schiff, Hardin & Waite, James Thomas Barnes, Chicago, IL, for plaintiffs.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Beth Ilyse Solomon, Eileen Sloan Newlin, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This case involves the issue of plaintiff's duties under its retrospectively-rated worker's compensation and general liability insurance policies issued to defendants. Plaintiff Liberty Mutual Insurance Company ("Liberty") filed this lawsuit to collect outstanding and unpaid insurance premiums allegedly due under those policies. Defendants have filed a second amended counterclaim alleging that Liberty breached its duties under those policies by failing to properly and thoroughly investigate claims made against the defendants. As part of their counterclaim, defendants filed a motion seeking to certify a class consisting of Illinois companies which purchased similar retrospectively-rated insurance policies from Liberty. Defendants allege that Liberty engaged in standardized claims handling practices which violated the standard terms of the retrospectively-rated

policies issued to putative class members.[1] For the reasons set forth below, this court denies the motion for class certification.

## BACKGROUND

Liberty is a Massachusetts corporation. Defendants and counter-plaintiffs Tribco Construction Company, McColl Construction Company, and Tribco/Riteway Joint Venture are construction companies or entities located in Illinois. For the sake of convenience, the three defendants will be referred to collectively as "Tribco."

This case concerns certain worker's compensation and general liability insurance policies which Liberty issued to Tribco and which were in effect from approximately 1989 to 1991. By virtue of the fact that these were worker's compensation and general liability policies, they provided that Liberty, as insurer, would handle and process the various worker's compensation or other claims filed against Tribco. Liberty would handle such claims by investigating, settling, and/or litigating them. These particular policies also were "retrospectively-rated" policies. To understand this case, it is necessary to understand how such a policy works.

As explained by the parties, a retrospectively-rated policy differs from a standard insurance policy. The premiums owed by the insured under a retrospectively-rated policy are not a set amount. Instead, they are periodically adjusted based on the amount of money paid in claims in the previous year and the amount of expenses relating to those claims. Because future premiums are determined based on past loss experi-

ence, the premiums are thus "retrospectively-rated." Premiums are adjusted based on a specific formula. Although the formula is more complex, its basic effect is that the insured ends up paying for most of the settlement amounts and related expenses up to certain pre-set maximum amounts.[2] The key point for purposes of this litigation is that the insurer makes the various decisions on how to investigate and litigate the claims and whether to settle them and for how much but the insured company actually pays for the settlements and expenses through higher future premiums. Thus, the role of the insurer is sometimes described as one similar to that of a claims processor or a third-party administrator.

In 1994, Liberty filed this lawsuit alleging that Tribco owed approximately $700,000 in unpaid premiums under the various retrospectively-rated policies.[3] After taking discovery, Tribco eventually filed a second amended counterclaim (the "Counterclaim") along with a motion for class certification. Tribco alleged that Liberty failed to properly and thoroughly investigate and litigate the various worker's compensation and general liability claims made against Tribco. As a result, according to Tribco, Liberty paid out too much to settle claims or settled claims which were questionable or doubtful. Tribco states that the nature of the retrospectively-rated policy encouraged Liberty to spend little time investigating claims because Liberty ultimately would be able to recoup the amounts paid in settlements by imposing higher premiums on Tribco.

The Counterclaims contains five state law counts.[4] Count I alleges a violation of the

---

1. This case previously was consolidated with the related case of *Liberty Mutual Ins. Co. v. Burnside Construction Co.*, No. 96 C 4803. In that case, Liberty filed suit against Burnside Construction Co. ("Burnside") seeking unpaid premiums under retrospectively-rated insurance policies. Burnside filed a counterclaim. Both the current defendants and Burnside were represented by the same counsel and filed joint briefs with respect to the class certification issue in this case. After the briefing was complete, however, Liberty and Burnside settled their dispute, and case No. 96 C 4803 was dismissed with prejudice.

2. As pointed out by Liberty, each insured could limit the risk of higher premiums by purchasing

various options such as a maximum annual ceiling on premiums and a maximum amount of loss per claim. As an example, Tribco had maximum premiums of 110%, 115%, and 150% of its standard premiums and maximum per claim loss limits of $100,000, $150,000, and $250,000.

3. In the related case of *Liberty v. Burnside Construction Co.*, Liberty alleged that Burnside owed approximately $360,000 in premiums relating to policies in effect between July 1986 and July 1990.

4. The parties agree that Illinois law applies to all the state law claims.

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Count II seeks an accounting of the premiums due under the policies. Count III seeks a declaratory judgment of the parties' rights under the policies and whether Liberty satisfied its obligations under those policies. Count IV alleges breach of contract. Count V is a claim for negligence. Tribco seeks to recover the "unreasonable and excessive" retrospective premiums, which it states are "in excess of $1.8 million." (¶ 54.) Tribco also alleges that "its reputation in the community" has been harmed. (*Id.*)

The focus of the Counterclaim is that Liberty breached its duties under the written insurance contracts by not investigating thoroughly the various claims against Tribco. Tribco alleges that Liberty orally represented that it would take various measures to ensure that it paid out only on legally valid claims. The Counterclaim also contains detailed allegations as to various oral representations allegedly made in December 1989 to Tribco's president by a Liberty sales representative named Mary Foy Doherty. Specifically, the Counterclaim alleges that Doherty met with Tribco's president, Robert McCollam, in December of 1989 and "told" McCollam that Liberty would provide various services in connection with Tribco's policy. (¶¶ 15–22.) Among other things, Doherty allegedly told McCollam that Liberty would institute "safeguards" to ensure that Tribco would be charged the lowest possible premiums under the retrospectively-rated policies (¶ 15); that Liberty would assign a "loss control representative" to "analyze Tribco's operations, identify loss sources and recommend corrective actions to be implemented by Tribco" (¶ 16); that Liberty's claims adjusters would audit claimants' medical and pharmaceutical bills, analyze doctor payments, analyze medical charges, and provide a hospital control program to limit claimants' hospital stays to the time needed to treat injuries properly at the lowest possible expense to Tribco (¶ 17); that Liberty would investigate all of Tribco's claims and pay to claimants only those benefits required of Tribco under the applicable laws (¶ 18); and that Liberty "would set accurate loss reserves" (¶ 21).

In addition to Doherty's alleged oral misrepresentations, Tribco alleges that Liberty owed a duty of good faith, fair dealing and reasonableness based solely on the fact that the policy was a retrospectively-rated policy. In sum, the Counterclaim alleges that the duties breached were written, oral, and implied-in-law under the duty of good faith. The Counterclaim lists 25 specific types of acts or omissions that constitute improper claims handling procedures and thus were alleged breaches of duty. (¶ 50.)

Tribco also seeks to certify a class consisting of insureds whose address is in Illinois and who obtained worker's compensation or general liability insurance policies with Liberty which were retrospectively-rated. (¶ 56.) The basis for proceeding as a class action is that Liberty's claims adjusters allegedly engaged in "standardized" claims handling procedures and practices. To support its assertion that Liberty's claims handling practices were standardized, Tribco relies on the deposition testimony of two Liberty employees— Diane Monhaut and Julieanne Nash—which allegedly confirms that Liberty's claims adjusters followed standard claims manuals to guide them in handling, investigating, and settling of claims. These standard manuals thus provide the common link to all the putative class members. In other words, if Liberty adjusters all follow the same manuals, then they must have handled the claims of all insureds in a similar manner.

In its brief, Tribco discusses four specific alleged standardized practices. First, Tribco alleges that Liberty's house counsel was required to obtain a claims adjuster's permission before incurring any significant expenses, such as ordering deposition transcripts and making out of town trips. Second, Tribco alleges that Liberty does not investigate medical-only claims under $1500 but simply pays out on those claims. Liberty supposedly concluded that it would be cheaper simply to pay those claims than to investigate them and to litigate any doubtful claims. Third, Tribco alleges that Liberty simply accepted the average weekly wage figure from the first report of injury without further investigation. Al-

legedly, neither the claims supervisor nor the claims adjuster would "double check" the average weekly wage figure that was being paid to a claimant. Fourth, Tribco alleges that the claims adjusters at Liberty were not required to contact an insured prior to making a settlement, resulting in the payments of "dubious claims" that Tribco would have challenged.

### ANALYSIS

■ Tribco seeks to certify a class and thus bears the burden of demonstrating that a class action is appropriate under Fed. R.Civ.P. 23. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The district court has "broad discretion" in determining whether to certify a class. *Id.* The court generally should take the allegations of the complaint as true and should not conduct a preliminary inquiry into the merits of the case. *See generally Moore's Federal Practice*, Vol. 5, § 23.61[5] (1998). Courts, however, may go beyond the pleadings to see if the requirements of class certification have been met. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (although certification question may be determined from the pleadings, a court may have to look beyond the pleadings to decide the question).[5]

The requirements for bringing a class action under Rule 23 are well-known. Under subsection (a) of Rule 23, the party moving for class certification must meet four "threshold requirements," summarized by the Seventh Circuit as follows:

(1) numerosity (the class must be so large "that joinder of all members is impracticable"); (2) commonality (there must exist "questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (the representative must be able to "fairly and adequately protect the interests of the class").

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In addition, the party must meet one of the three requirements of subsection (b). Tribco attempts to rely on either subsection (b)(2) or (b)(3), which provide:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b).

■ In this case, Liberty argues that Tribco cannot meet the four subsection (a) requirements (except for numerosity) nor the requirements of either subsection (b)(2) or (b)(3). The main focus of Liberty's arguments is on the requirements of subsection (a)(2) and (b)(3), which concern the issue of whether there are common questions of fact and law. Because the inquiry under subsection (a)(2) essentially is subsumed within the inquiry under subsection (b)(3), this court will focus its analysis on whether Tribco can meet the two requirements of subsection (b)(3)—namely, (i) whether common questions of fact and law "predominate" over individual questions and (ii) whether a class action is "superior" to other methods for resolving the controversy. After analyzing these two requirements, this court then will consider Tribco's alternative argument that a class should be certified under subsection (b)(2).

### I. Subsection (b)(3).

#### A. Whether Common Issues Of Law Or Fact Will Predominate.

■ Under the first half of the subsection (b)(3) inquiry, this court must ask whether

---

5. In this case, the request for class certification was made in the second amended counterclaim filed after the parties had conducted discovery and taken depositions. As a result, both parties have cited to deposition testimony to support their respective positions on the question of class certification. In effect, the parties themselves already have gone beyond the pleadings.

common issues of law or fact will "predominate" over individual ones. This question is the focal point of the parties' briefs. To support their respective positions, both sides describe how they think this case will be litigated.

Tribco suggests that this case will require the resolution of only a few common questions and, once those questions are answered, it will be easy to resolve the remaining individual issues. First, it will be necessary to determine what duties were owed by Liberty. Tribco argues that this question can be resolved on a class-wide basis because Liberty allegedly used form contracts that are the same as to all insureds. Alternatively, Tribco argues that the duty of good faith, fair dealing and reasonableness should apply uniformly because this duty is implied in law based on the simple fact that a party purchased a retrospectively-rated policy from Liberty, which is a requirement for being included as a class member. Second, it will be necessary to determine whether Liberty breached these duties by its particular claims handling practices. Tribco argues that this question also can be resolved on a class-wide basis because Liberty's claims handling practices were "standardized" and thus were the same as to each insured's claims.

Tribco asserts that once these two common questions are resolved, then it will be relatively easy to determine damages for each insured. Tribco specifically argues that if Liberty breached a contractual duty, then Liberty must "disgorge" all insurance premiums paid. Tribco argues that it will be easy enough to find out the amount of insurance premiums each class member paid to Liberty because such information is readily available in Liberty's computer system. In sum, as conceptualized by Tribco, this case will be dominated by one common issue—namely, whether Liberty's standardized claims handling practices breached the standard contractual duties as defined either by a form contract or by the duty of good faith.

Not surprisingly, Liberty paints a different picture. It believes that, although there may be some common issues, this case will be dominated by individual issues. Although Liberty makes numerous arguments, it relies mainly on the following ones. Liberty argues that the specific allegations in Tribco's Counterclaim demonstrate that Tribco relied on various oral representations regarding the type of claims handling practices. Liberty thus argues that a class should not be certified because there are individual issues as to the specific oral representations Liberty may have made to each insured. Liberty also argues that it did not use any standardized practices or manuals and states that the deposition testimony relied on by Tribco simply does not support such a conclusion. Liberty finally argues that—even assuming that there are uniform contractual duties and uniform claims handling practices that violate those duties—there are individual issues relating to particular claims. Specifically, Liberty agues that it should have a right to show that the settlement entered into for each individual claim was reasonable. Stated differently, Liberty argues that it is entitled to reasonable compensation and that Tribco is only entitled to any excess compensation. Under Liberty's approach, there likely will need to be litigation on a claim-by-claim basis.

Both sides offer persuasive arguments in support their positions. However, after carefully reviewing the briefs and the applicable law, this court does not believe that Tribco has met its burden of demonstrating that common issues of law or fact will "predominate" over individual ones. In making this determination, this court will focus on the two objections made by Liberty relating to the alleged uniform contractual duties and the litigation of individual claims.[6]

First, Tribco argues that the contractual duties are uniform across the class. This court does not agree with this assessment because the Counterclaim relies almost exclusively on oral representations, as opposed

---

**6.** Therefore, this court will proceed on the assumption that Liberty in fact engaged in standardized claims handling procedures as set forth in certain standard manuals. In making this assumption, the court does not intend to express an opinion on the larger question of whether the evidence in fact supports this assumption. Both parties argue over whether certain deposition testimony demonstrates that such standardized practices even exist.

to written representations, made by Liberty. Tribco tries to avoid this point by stating that the alleged oral representations were nothing more than "repetitions" and "reiterations" of various promotional literature. However, Tribco has not pointed specifically to any representation made in such literature. The Counterclaim also does not refer specifically to any such written literature. Instead, the Counterclaim refers repeatedly to the representations Doherty "told" McCollam. Those representations are specific and are listed in paragraphs 15 through 22 of the Counterclaim.

For these reasons, this court is not convinced that the alleged oral representations were the same to all the insureds in the putative class. Therefore, because this case likely will involve litigation concerning oral representations, it is not suitable as a class action. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989) (denying class certification because the oral representations about the insurance policy varied from consumer to consumer); *see generally Moore's Federal Practice,* Vol. 5, § 23.47[1][b] (1998) ("Certification of a class based on the existence of oral misrepresentations is generally denied on the ground that such representations are likely to vary from purchaser to purchaser, so that such a case involves predominantly individual questions.").[7]

Second, Tribco argues that the individual issue of damages will be easy to determine once it is determined that Liberty engaged in standardized practices and that those practices violated a contractual duty. Tribco argues that if Liberty unreasonably settled certain claims, then it should "disgorge" all premiums and that there is no need to show any actual loss. In Tribco's view, it will not be necessary to look at particular individual claims to see whether the amounts actually paid were reasonable. Liberty argues that it

should be able to prove that particular individual settlements in fact were reasonable. For the reasons set forth below, this court believes that Liberty should be able to litigate the reasonableness of individual claims.

In its brief, Tribco repeatedly cites to and relies on four state court decisions, including one in Illinois, which have applied a duty of good faith in the specific context of an insurer's handling of claims under a retrospectively-rated insurance policy. *See National Surety Corp. v. Fast Motor Service, Inc.,* 213 Ill.App.3d 500, 157 Ill.Dec. 619, 572 N.E.2d 1083 (1991); *Deerfield Plastics Co. v. Hartford Ins. Co.,* 404 Mass. 484, 536 N.E.2d 322 (1989); *Transit Casualty Co. v. Topeka Transp. Co.,* 8 Kan.App.2d 597, 663 P.2d 308 (1983); *Transport Indemnity Co. v. Dahlen Transport Inc.,* 281 Minn. 253, 161 N.W.2d 546 (1968). Although none of these cases involved a class action, they nonetheless provide a guide for applying the duty of good faith in this particular factual context. Because the parties agree that Illinois applies, the court will focus on the particular facts of the Illinois decision to determine the proper approach for resolving this question.

In *National Surety Corp. v. Fast Motor Service, Inc.,* 213 Ill.App.3d 500, 157 Ill.Dec. 619, 572 N.E.2d 1083 (1991), the Illinois appellate court for the first time held that the duty of good faith and reasonableness applies to an insurer issuing a retrospectively-rated insurance policy.[8] The facts of *Fast Motor* are similar to this case. The insurer, National Surety Corporation ("National"), sued the insured, Fast Motor Service, Inc. ("Fast Motor"), for unpaid insurance premiums of $108,117.[9] *Id.* at 1085. Fast Motor filed a counterclaim and alleged that National was negligent by "failing to properly investigate claims, failing to obtain wage statements, overreserving claims, and overpaying

---

7. Tribco relies both on the duty of good faith and also on duties allegedly promised orally or in the written contracts. It should be noted that the duty of good faith is an implied duty that "is a gap-filling approach designed for an issue 'that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.'" *L.A.P.D., Inc. v. General Elec. Corp.,* 132 F.3d 402, 404 (7th Cir.1997) (discussing Illinois law).

8. Illinois courts previously had applied the duty of good faith in the situation where an insurer wrongfully failed to settle an insurance claim within policy limits.

9. The total amount of premiums due under the applicable insurance policies was actually $143,217. Fast Motor previously had made a partial payment of approximately $35,000.

claims." *Id.* Fast Motor argued that as a result of the negligence it was forced to pay "higher" premiums and that it "would be forced to incur higher premiums in the future due to the 'distorted loss experience' calculated from the excessive claims paid." *Id.* A jury awarded Fast Motor $75,000 in damages.

On appeal, the appellate court affirmed the trial court and held that "an insured should be able to state a viable cause of action for breach of an insurer's duty of good faith based on the insurer's failure to act reasonably when adjusting claims under a policy of insurance which contains a retrospective premium feature notwithstanding the fact that the policy of insurance contains no express provisions imposing such duty." *Id.* at 1087. The court relied heavily on an earlier Massachusetts case—*Deerfield Plastics Co. v. Hartford Ins. Co.*, 404 Mass. 484, 536 N.E.2d 322 (1989). The Illinois appellate court noted with approval that the Massachusetts court held that, once the insured produced evidence that the insurer was negligent in handling a particular claim, then the burden shifted to the insurer "to prove that the settlement made on the claim did not exceed the highest reasonable amount at which the claim would have probably been settled if it had been investigated properly." *Fast Motor*, 157 Ill.Dec. 619, 572 N.E.2d at 1087. In other words, for each settlement, the insurer could try to show that the amounts paid were reasonable even though the insurer did not investigate the claim before settling it. Fast Motor ultimately recovered in damages only a portion of the total premiums it had paid under the policies.

This court believes that the reasoning and facts of *Fast Motor* are inconsistent with Tribco's theory that it should be able to recover all premiums without litigating whether the particular individual settlements were reasonable. In arguing that it should be able to recover all premiums without proving any actual loss sustained, Tribco does not cite to *Fast Motor* or any of the three other relevant state court decisions even though Tribco elsewhere in its brief relies heavily on those cases. Instead, Tribco relies on two older Illinois cases—*Blanchard v. Lewis*, 414 Ill. 515, 112 N.E.2d 167 (1953) and *Shinpaugh v. Midwest Life Ins. Co.*, 32 Ill.App.2d 207, 177 N.E.2d 426 (1961)—neither of which involved a retrospectively-rated policy nor even discussed the duty of good faith.[10] Accordingly, relying on *Fast Motor* and *Deerfield*, this court believes that Liberty should have the right to prove that the individual settlements were reasonable.[11]

Having concluded that there likely will be litigation over the reasonableness of at least some of the individual claims, this court finds that individual issues necessarily will predominate given the large number of individual claims. Liberty states—and Tribco has not disputed—that Liberty covered 222 policyholders under 952 retrospectively-rated general liability and worker's compensation policies during the two year period from January 1, 1989 to January 1, 1991. During this two-year period, Liberty states that there were over 46,000 individual claims. Tribco basically concedes that if particular individual claims may be litigated on a claim-by-claim basis then individual issues will predominate over class-wide issues.

10. Elsewhere in its reply brief, Tribco faults Liberty for citing to cases which did not specifically involve a retrospectively-rated insurance policy. (Tribco Reply at 14: "Since neither case dealt with the duties owed under a retrospective insurance policy, neither case is apposite.")

11. This approach also is supported by the specific allegations of the Counterclaim, which suggest that Tribco in fact is seeking recovery for the excessive or higher premiums paid out on the particular claims that were questionable or doubtful. *See, e.g.*, Counterclaim ¶ 52(i) (alleging that Liberty improperly demanded payment of "unreasonable and excessive" premiums); ¶ 54 (seeking $1.8 million "in unreasonable and excessive retrospective premiums"); ¶ 79 (alleging that Liberty paid "excessive amounts" of compensation on claims); ¶ 82 (requesting a declaratory judgment whether Liberty satisfied its obligations under the policies "as to *each claim* asserted against defendants;" emphasis added); ¶ 86 (seeking recovery for the *"higher* insurance premiums" emphasis added); ¶ 90 (same). In contrast to these allegations, Tribco argues in its brief for return of *all* premiums whether or not they were excessive or unreasonable.

In sum, although Tribco makes a valiant attempt at characterizing this case as one involving a few simple common issues, this court simply does not believe that this case can be tried without investigation into the particulars of at least some of the individual claims against the insureds.[12] As applied to a class of over 200 insureds, this process likely would lead to the litigation of numerous individual issues, which ultimately would overwhelm and predominate any common issues of fact or law. This court simply is not convinced that this case can be litigated in the simple and uniform fashion recommended by Tribco.

## B. Whether A Class Action Is Superior To Other Alternatives.

Even if common issues predominated over individuals issues, under the second half of the subsection (b)(3) inquiry, this court must determine whether proceeding as a class action would be superior to other alternatives. The other alternative in this case is to allow the various individual insureds to file and prosecute individual actions. In considering whether the class action mechanism is superior, the rule states that courts may consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). For the reasons set forth below, this court concludes that the better course would be to allow the individual putative class members to file and prosecute their own actions.

■ As the Seventh Circuit has stated, the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997). For this reason, courts often find that class actions are not appropriate when the individual members are sophisticated and have large claims. *See In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1297–1300 (7th Cir.1995) (the existence of large individual claims undercut the alleged superiority of the class action); *see generally Moore's Federal Practice*, Vol. V, § 23.48[2][a] (1998). Although this factor is not dispositive, *see, e.g., Scholes v. Moore*, 150 F.R.D. 133, 137–38 (N.D.Ill.1993), it does weigh against a finding that the class action is superior.

■ As noted above, it is undisputed that the class would consist of approximately 220 companies. It also is undisputed that these companies are large and sophisticated businesses that regularly purchase large amounts of insurance. The average annual premiums paid by each putative class member is approximately $690,000. Both Tribco and Burnside have alleged damages in excess of $1.8 million. *See, e.g., Robin v. Doctors Officenters Corp.*, 123 F.R.D. 579, 582 (N.D.Ill. 1988) (finding that individuals claiming losses of more than $360,000 clearly were capable of seeking recovery in individual litigation).

Tribco responds that even though the class members are large and sophisticated businesses, they likely would not file individual lawsuits because Liberty allegedly has kept its improper claims handling practices secret by, among other things, refusing to turn over documents to its clients. However, Liberty has filed affidavits showing that at least some of the putative class members are aware of this litigation. This case previously was consolidated with a similar case involving Burnside Construction Company. Moreover, it is clear that other insureds have filed suit against Liberty and also have alleged that Liberty's claims handling practices under retrospectively-rated policies breached a duty of good faith. *See, e.g., Liberty Mut. Ins. Co. v. Marty's Express, Inc.*, 910 F.Supp. 221 (E.D.Pa.1996). In short, these facts show that the putative class members are capable of bringing individual lawsuits if

---

12. In addition, as pointed out by Liberty, Tribco is also seeking damages for harm to its reputation. This element of damages adds yet another individual issue.

they believe that Liberty breached its duties. *See, e.g., Primavera Familienstiftung v. Askin,* 178 F.R.D. 405, 411 (S.D.N.Y.1998) (denying class certification motion but granting motion to consolidate: "The financial resources of the potential class members, their ability to institute individual lawsuits and the amount of each claim also militate against grant of class certification.").[13]

For these reasons, this court finds that Tribco has not shown that it can meet either of the two requirements for certifying a class under subsection (b)(3) of Rule 23.

## II. Subsection (b)(2).

 Alternatively, Tribco seeks to certify a class under subsection (b)(2) of Rule 23. Subsection (b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). The parties spend little time discussing this particular subsection. Tribco argues that a class action is appropriate under subsection (b)(2) because Liberty acted on grounds generally applicable to the class. For the reasons discussed with regard to subsection (b)(3), this court believes that there are several individual issues that will predominate over issues generally applicable to the class.

Moreover, class certification under subsection (b)(2) generally is not appropriate when a party primarily seeks monetary relief. *See Moore's Federal Practice,* Vol. 5, § 23.43[3][a] (1998) ("As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages."). While it is true that Tribco requests a declaratory judgment in Counts II and III, the focus of the Counterclaim is on monetary relief. In short, this court does not believe that the facts of this case fit within the dictates of subsection (b)(2). *See generally id.,* § 23.43[l][a] ("Rule

23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions."). Accordingly, Tribco has not met its burden of showing that class certification is justified under subsection (b)(2) of Rule 23.

## CONCLUSION

For the reasons set forth above, this court denies the motion for class certification.

---

13. In addition, in deciding whether a class action is superior to individual actions, this court may look at whether other similar litigation is pending. Although some other insureds occasionally have filed similar claims against Liberty, numerous suits are not pending. Therefore, this is not a situation where there is a compelling need to litigate all possible claims in one forum such as where there are multiple lawsuits proceeding at the same time.